## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## DELTA DIVISION

CHRIS JOHNSTON                                                                      PLAINTIFF
ADC #600097

V.                              No. 2:19CV00039-DPM-JTR

PIERRE LONG,
CO/Sgt., EARU, *et al.*                                                             DEFENDANTS

## RECOMMENDED DISPOSITION

The following Recommended Disposition has been sent to Chief United States District Judge D.P. Marshall Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Marshall may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

### I. Introduction

Plaintiff Chris Johnston ("Johnston"), a prisoner in the East Arkansas Regional Unit of the Arkansas Division of Correction ("ADC"), alleges that Defendants CO/Sgt. Pierre Long ("Long"), Lt. Amanda Granger ("Granger") and

Sgt. Lester Allen ("Allen"), violated his constitutional rights when they failed to protect him from being assaulted by several inmates on October 11, 2018. *Doc. 2.*

Defendants have filed a Motion for Summary Judgment, a Brief in Support, a Statement of Undisputed Facts, and a Reply, arguing that all of Johnston's claims should be dismissed for failure to exhaust administrative remedies. *Docs. 12-14 & 21.* Johnston has filed two Responses. *Docs. 19-20.* Thus, the issues are joined and ready for disposition.[1]

## II. Discussion

### A. ADC Requirements for Exhausting Administrative Remedies

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust all available administrative remedies *before* filing a § 1983 action: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purposes of the exhaustion requirement include "allowing a prison to address complaints about the program it administers before being subjected to suit,

---

[1] Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex,* 477 U.S. at 323. Thereafter, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* Fed R. Civ. P. 56(c); *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011).

reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock,* 549 U.S. 199, 219 (2007). In *Woodford v. Ngo*, 548 U.S. 81, 85 (2006), the Court held that the PLRA's exhaustion requirement is "mandatory." *See also Muhammad v. Mayfield,* 933 F.3d 993, 1000 (8th Cir. 2019).

The PLRA requires prisoners to: (1) *fully and properly* exhaust their available administrative remedies *as to each claim* in the complaint; and (2) complete the exhaustion process *before* filing an action in federal court. *Jones,* 549 U.S. at 211, 219-20, 223-24; *Woodford,*, 548 U.S. at 93-95; *Burns v. Eaton,* 752 F.3d 1136, 1141-42 (8th Cir. 2014); *Johnson v. Jones,* 340 F.3d 624, 626-28 (8th Cir. 2003). Importantly, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones,* 549 U.S. at 218; *see also Woodford*, 548 U.S. at 90 (explaining that administrative exhaustion "means using all steps that the agency holds out, and doing so properly so that the agency addresses the issues on the merits"). Thus, to satisfy the PLRA, a prisoner must comply with the exhaustion requirements of the incarcerating facility before he can properly file a § 1983 action.

The ADC provides a three-step administrative grievance process. ADC Adm. Dir. 14-16 §§ IV(E)-(G) ("AD 14-16").[2] "If no one responds at Steps One and Two

---

[2]Defendants submitted a copy of AD 14-16 with their summary judgment papers. *Doc. 12, Ex. 1.*

3

– or if the responses at those steps are dissatisfactory – an inmate may appeal to the level of ADC's 'Chief Deputy/Deputy/Assistant Director' at Step Three." *Muhammad*, 933 F.3d at 997-98.

The ADC administrative grievance policy provides: "Grievances must *specifically name each individual involved for a proper investigation and response to be completed by ADC."* AD 14-16 § IV(C)(4) (emphasis added); *see also* § IV(E)(2) (requiring the grievant to be "specific as to the substance of the issue or complaint to include the date, place, personnel involved or witnesses"). The grievance forms themselves contain these instructions to ensure prisoners are aware of them. AD 14-16, Att. 1 ("[B]e specific as to the complaint, date and place, name of personnel involved and how you were affected."). Finally, the ADC's policy cautions prisoners that, if they fail to "exhaust their administrative remedies as to all defendants at all levels of the grievance procedure … their lawsuits or claims may be dismissed immediately" under the PLRA. AD 14-16 § IV(N); *see also* § IV(C)(4) & (D)(2) (both advising inmates to fully exhaust a grievance prior to filing a lawsuit).

## B. Johnston's Claim

In his Complaint, Johnston alleges that, on October 11, 2018, Defendant Long was working the control booth for 3, 4, 5 and 6 Barracks, and Defendants Granger and Allen were supervising the south wing. According to Johnston, when he entered 4 Barracks about 9:00 p.m., it was dark because Long had turned off the overhead

lights and the "security lights" were "broken or busted." He alleges that, as he went down the stairs to the bottom tier, three or more inmates attacked him from behind, and hit him in the head and face until he lost consciousness. Another good Samaritan inmate then carried him to the barracks door, and got Long's attention. Johnston was taken to the infirmary, where he received medical attention for his injuries before being placed in an infirmary observation cell. The next day, he was taken to the hospital, where a CT scan showed a broken nose and orbital fractures. *Doc. 2 at 4-10.*

Johnston speculates that, while he was being assaulted, Long was "either asleep or not in the 3 and 4 [control] booth," and neither Granger nor Allen was "properly monitoring" the barracks. He claims this is sufficient to establish their deliberate indifference to his health and safety, in violation of the Eighth Amendment, because they failed to provide "proper lighting and proper security." *Id. at 5, 7 & 10.*

    **C.    Defendants' Motion for Summary Judgment**

The parties *agree* that Johnston fully exhausted only one relevant grievance before he initiated this action: EA-18-01326. *Doc. 12, Ex. 2 ¶¶ 10 & 12; Doc. 14 ¶ 8; Doc. 19 at 1; Doc. 21 at 2.* In their summary judgment papers, Defendants argue that, because EA-18-01326 did *not* name any of them, as required by the ADC

grievance policy, it was not *properly* exhausted and cannot be used as evidence Johnston has satisfied his obligation to exhaust under the PLRA. *Docs. 12, 13 & 21.*[3]

In his Responses, Johnston contends that the exhaustion requirement should be "excused" because his physical condition and pain medication in the weeks after the alleged assault made the grievance process "unavailable" to him. He also alleges that, due to the nature of the assault and the lack of lighting in the barracks, it was "virtually impossible" for him to identify either the inmates who assaulted him *or* the guards involved and then name them in a grievance. *Doc. 19 at 2-5.*

In *Ross v. Blake*, 136 S. Ct. 1850, 1858-59 (2016), the Court clarified that a prisoner must exhaust "available" grievance procedures, which were narrowly defined as those that are "capable of use."[4] Here, Johnston's alleged physical infirmities did *not* prevent him from filing a grievance, or filing it within the time limitations set by the ADC's grievance procedure. Instead, as will be explained, he filed his grievance on time, it was accepted and considered by prison officials, and

---

[3]In support of their Motion, Defendants submit: (1) an Affidavit, dated May 29, 2019, from Terri Grigsby, the ADC's Agency Inmate Grievance Supervisor, *Doc. 12, Ex. 2;* and (2) Grievance EA-18-01326, *id., Ex. 3.*

[4]The Court went on to emphasize that administrative remedies are "unavailable" only under limited circumstances which "will not often arise." *Ross,* 136 S. Ct. at 1859. The Court gave three examples: (1) when the process "operates as a simple dead end," with officials unable or consistently unwilling to provide any relief; (2) when the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; or (3) when prison officials thwart inmates from taking advantage of a grievance process through "machination, misrepresentation, or intimidation." *Id.* at 1859-60.

he proceeded through the three required administrative steps. Thus, there is simply nothing to support Johnston's position that he should be "excused" from being required to comply with the PLRA's exhaustion requirement based on his "physical condition," when it did *not* prevent him from filing and fully exhausting his grievance. In other words, Johnston's problem was his failure to *properly exhaust* his grievance, *by naming or otherwise identifying* the guards who were the subjects of his complaints. *If* he did not know their names, he still could have described them by rank or the location of their duty station. Instead, he provided *nothing* that could be used to identify those individuals. Because the ADC's grievance procedures unquestionably were available for Johnston's "use," as he himself demonstrated *by using them,* there is no legal basis for "excusing" him from the requirement that he *properly* exhaust his grievance, as required by the PLRA and reinforced by the Court's holding in *Ross.*

The ADC grievance requirement that a prisoner "specifically name each individual involved for a proper investigation and response to be completed by ADC" (AD 14-16 § IV(C)(4)) was designed to allow the ADC to have "a fair and full opportunity to adjudicate [the prisoner's] claims" so that they might be resolved, without the need for the prisoner to file a § 1983 action. *Woodford,* 548 U.S. at 90. "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's

7

requirements, not the PLRA, that define the boundaries of proper exhaustion." *King v. Iowa Dep't of Corrections,* 598 F.3d 1051,1054 (8th Cir. 2010) (quoting *Jones,* 549 U.S. at 218)). Because of Johnston's failure to name *anyone* (either the guards allegedly responsible for failing to protect him from the attack or any of the attackers), the ADC was prevented from investigating the allegations contained in EA-18-01326 and preparing a response addressing the merits of Johnston's complaints.

According to the grievance documents, on October 19, 2018, Johnston filed the following Step One informal resolution:

> On or about 10-11-18, I was attacked in population by an unknown amount of inmates in 4 bks. It happened from behind downstairs in the dark. As there is no security lights down there nor have been for months. An inmate B. Kenney I'm told had to alert *the officers on the door* that I needed help. I was unconscious and don't remember a lot except I couldn't see for eyes swollen and blood everywhere. I have feared retaliation and couldn't see too well is why it's taken so long for me to write this grievance. Plus I hear there is still a "hit" on me if I go to population and I still can't see good. I'm still off balance and still in pain as a result of all this and not only did another inmate have to alert *the officers*, no one has been locked up as a result [because] the camera doesn't show who did it and a proper investigation wasn't completed to find out. So my assailants are still out there.

*Doc. 12, Ex. 3 at 1* (emphasis added). Johnston's informal resolution did not identify *any* ADC personnel he believed were responsible for failing to protect him from the assault.

On October 23, 2018, Johnston's informal resolution was treated as a Step Two unit-level grievance, and designated as EA-18-01326. *Id.*

On December 28, 2018, the Warden provided the following response to Johnston's Step Two grievance:

> Documentation shows that the above incident was investigated; however during the investigation you did not provide a[ny] names as to who attacked you. Without a name(s) a thorough investigation could not be conducted.

*Id. at 2*. Thus, even though the Warden *attempted* to investigate the alleged assault, he was unable to do so because the grievance filed by Johnston failed to provide sufficient information to identify the guards who failed to protect him or the prisoners who attacked him. Because the Warden was unable to investigate the underlying incident, he was unable to address the merits of Johnston's complaints in EA-18-01326.

On January 3, 2019, Johnston proceeded to Step Three and appealed the denial of this grievance to the Deputy Director. In his appeal, he stated:

> The lights (security) being out and the lack of attention by *the officer on duty* and the camera not being able to see anything resulted collectively to me being attacked. Nothing was seen, so nothing was done about it. I don't know who attacked me, but it could've been prevented and/or identified had there been lights to see and so the camera would see and so *the officer* could see had he been monitoring as required.

*Id. at 2* (emphasis added). While Johnston's Step Three appeal provided a few more details he still did not identify which "officer on duty" he meant, or name any other

9

ADC personnel who he believed were responsible for preventing the attack. Again, he failed to name any of the inmates who had allegedly attacked him.

On January 17, 2019, the Deputy Director denied Johnston's appeal and stated that he "concur[red] with the warden's decision." He further stated: "A proper investigation was conducted, but without knowledge of who to investigate, no one could be held accountable. Your appeal is without merit." *Id. at 3*. Like the Warden, the Deputy Director was unable to address the merits of Johnston's grievance because he failed to provide sufficient information for ADC officials to investigate the underlying incident.

The Eighth Circuit has upheld dismissals, for lack of exhaustion, where a prisoner failed to specifically name ADC officials in his grievance, which prevented the ADC from investigating the grieved conduct and then addressing the grievance on the merits. *Townsend v. Murphy,* 898 F.3d 780, 784 (8th Cir. 2018) (because the ADC prisoner "made no mention [in his grievance] of Romine or White, nor of the specific factual allegations that would later appear in his federal complaint," and "did not even hint that anyone other than Murphy was responsible for his exposure to chlorine gas," he did not exhaust his administrative remedies against them); *Burns,* 752 F.3d at 1141-42 (because "the ADC was not asked to evaluate the conduct of [prison guard] White or the distinct § 1983 claims first asserted by Burns in his [§ 1983] complaint," Burns's § 1983 claim against White asserted "a new

grievance … completely unexhausted"); *see also Axelson v. Watson*, No. 5:15cv241-BSM, 2016 WL 6573956, at *1 (E.D. Ark. Nov. 4, 2016) (dismissing individual defendants where the prisoner's failure to name them in grievances prevented the ADC from being able to investigate the merits of his complaints against them); *Daniels v. Hubbard,* No. 5:14cv360-BSM, 2015 WL 9222627, at *1 (E.D. Ark. Dec. 17, 2015) (explaining that "the cases in which the failure to name a defendant [in a grievance] requires dismissal are those cases in which the failure … prevented the ADC from investigating the grievance on the merits," and noting that the ADC's administrative directive "acknowledges the link between detailed grievances and its ability to investigate").

Here, just as in *Townsend* and *Burns,* Johnston's grievance did not name or otherwise identify Long, Granger or Allen, or describe anything about their alleged misconduct that supports the § 1983 claim he is now asserting against them in this action. Johnston's grievance also failed to name or otherwise describe the other "individual[s] involved," *i.e.,* the inmates who allegedly assaulted him. Thus, by filing a grievance that identified *no one,* in any capacity, who was connected to the attack, Johnston deprived the ADC of the ability to investigate the matter *at all*, much less reach the merits of the allegations he is now attempting to assert against Long, Granger and Allen, for the first time, in this § 1983 action.

In his § 1983 Complaint, Johnston clearly and specifically identified Long as the officer who "was working (3, 4, 5, 6) barracks control booth(s)" at about 9:00 p.m. on October 11, 2018, and Granger and Allen as the lieutenant and sergeant "supervising the South Wing" at that time. *Doc. 2 at 4.* All of that information should have been known to Johnston when he filed his informal resolution. However, even if he did not know their names when he initiated his grievance proceeding, he could have described them, as he does in his § 1983 Complaint, as "the officer working in the 3, 4, 5 and 6 barracks control booth" or the "lieutenant" and "sergeant" "supervising the South Wing." Simply making a generic reference to "officers" in his grievance was not sufficient to enable ADC prison officials to conduct an adequate investigation into Johnston's claim that "someone" failed to protect him from the attack by inmates, who were also "unknown."

It is undisputed that, in EA-18-01326, *the only relevant grievance Johnston filed about the October 11, 2018 incident*: (1) he did not name or otherwise specifically describe Long, Granger or Allen in any of the papers he filed at the three administrative steps for exhausting EA-18-01326; and (2) nothing in EA-18-01326 indicates that Long, Granger and Allen were involved in or otherwise responsible for failing to protect Johnston from being assaulted. As a result, EA-18-01326 did *not* put ADC officials on notice that Johnston believed Long, Granger or Allen did anything that needed to be investigated. The ADC officials who reviewed EA-18-

01326 *attempted* to investigate Johnston's vague allegations but were unable to do so, which prevented them from addressing the grievance on the merits.

Accordingly, because Johnston failed to properly exhaust his administrative remedies as to the § 1983 claim he is asserting against Defendants, the Court recommends that summary judgment be entered in their favor on that claim.

### D. Johnston's Belated Attempt to Pursue "Other Claims"

In his Response to Defendants' Motion for Summary Judgment, Johnston contends that he identified other Defendants in his Complaint, who have not yet been served. *Doc. 19 at 1 & 5.* On the Complaint form, Johnston named only Long, Granger and Allen as Defendants. *Doc. 2 at 1-2.* In the body of the Complaint, he asserts a series of vague and tangential claims against Major Knott, Warden Andrews, ADC Director Kelley, Classification Officer Ms. Westbrook, John Doe Inmates #1-4, and Jane Doe Nurses #1 and #2, none of whom are identified as Defendants on pages 1-2 of his Complaint.

In the April 23, 2019 Order screening Johnston's Complaint, the Court allowed him to proceed with his failure to protect claims against the three *named* Defendants: Long, Granger and Allen. *Doc. 4.* Johnston did not challenge that Order or advise the Court that he wished to pursue any of the other vague and tangential claims he made against individuals who were *not* identified as Defendants. It is now far too late for Johnston to suggest, for the first time in his Response to Defendants'

13

Motion for Summary Judgment, that he intended to have those random individuals named and served as Defendants.

If Johnston's claim against Long, Granger and Allen is barred because he failed to exhaust that claim *in the only grievance he filed* about the October 11, 2018 incident, *a fortiori,* his other claims against the individuals he refers to in his Complaint are also barred because none of those claims have been exhausted.

### III. Conclusion

IT IS THEREFORE RECOMMENDED THAT Defendants' Motion for Summary Judgment (*Doc. 12*) be GRANTED, and Johnston's § 1983 failure to protect claim against Long, Granger and Allen be DISMISSED, without prejudice, based on Johnston's failure to properly exhaust that claim.

DATED this 27th day of February, 2020.

_____
UNITED STATES MAGISTRATE JUDGE